The Honorable Randy Bryant State Representative 14138 DeGraff Road Rogers, Arkansas 72756
Dear Representative Bryant:
This is in response to your request for an opinion on the following questions:
 Can the city of Eureka Springs legally restrict or regulate motorcycles (3.8 h.p. 49 cc's and larger) that are rented within the city limits, or from outside the city limits, upon their city streets and highways, if the driver is in full compliance with state law and the vehicle is state safety inspected, titled, licensed, and registered under 27-14-702, by requiring all drivers to further comply with the provisions, conditions and restrictions of their moped franchise ordinance?
 Can the city of Eureka Springs legally restrict a moped rental business, located outside the city limits, from allowing those rented vehicles to be ridden on their city streets and state highways by requiring all state qualified drivers to further comply with the provisions, conditions and restrictions of their city moped franchise, while at the same time the city does not equally apply their moped ordinance to any locals nor to any other tourists who drive their personal mopeds in Eureka Springs?
You have included with your request copies of Ordinance 1393 of the City of Eureka Springs (the "City"), a measure regulating the rental and operation of mopeds, three-wheeled vehicles and other similar vehicles, and Ordinance 1475 of the City, amending Ordinance 1393 (as amended, the "Ordinance").
With respect to your first question, I note that the Ordinance defines "moped, three-wheeled vehicle and other similar vehicle" as "any vehicle with 2 or more wheels, an automatic transmission, and a motor which does not displace in excess of fifty (50) [cubic] centimeters." Arkansas Code Annotated § 27-20-101(3) (Repl. 1994) defines "motorized bicycle" as "every bicycle with an automatic transmission and a motor which does not displace in excess of fifty cubic centimeters (50 cc)." That code section also defines "motorcycle" and "motor-driven cycle" with reference to, among other things, engine displacement. I find no reference in the Arkansas Code or the Ordinance to vehicles generating 3.8 or more horsepower or to vehicles with engines displacing 49 or more cubic centimeters. I am therefore unsure of the reason you defined motorcycles as you did in your inquiry. I will assume that your inquiry is concerned primarily with municipal authority with respect to those vehicles that are "mopeds, three-wheeled vehicles, and other similar vehicles," within the meaning of that phrase as used in A.C.A. § 27-49-106(b)(8) (Pamphlet 1995), and those that are not.
In addressing the substance of your first question, I would first point out that nothing in the Ordinance purports to regulate any practice with respect to vehicles having engines that displace more than 50 cubic centimeters. As noted above, the Ordinance clearly defines the vehicles with which it is concerned as those having, among other things, engines that displace 50 or fewer cubic centimeters. Although portions of the Ordinance use the word "vehicles" rather than the phrase "mopeds, three-wheeled vehicles, and other similar vehicles," the Ordinance is, in my opinion, clearly concerned only with mopeds, three-wheeled vehicles, and other similar vehicles, as defined therein, and was not intended by the City Council as an attempt to regulate the use or rental of vehicles not meeting the definition. The Ordinance states that it was adopted under authority of A.C.A. § 27-49-106, subsection (b)(8) of which states that subtitle 4 of title 27 of the Arkansas Code shall not be deemed to prevent local authorities from "regulating or prohibiting the traffic from and use of mopeds, three-wheeled vehicles, and other similar vehicles." Finally, the Ordinance, immediately following a reference to mopeds, three-wheeled vehicles, and other similar vehicles, states that its intent is to regulate "the use of these types of vehicles. . . ." [Emphasis added.] In my opinion, then, nothing in the Ordinance applies with respect to vehicles having engines displacing in excess of 50 cubic centimeters or their owners, operators, or lessors as such. It follows, and it is my opinion, that the City may not, under authority of the Ordinance, impose any of the regulations contained in the Ordinance upon the owners, operators, or lessors of vehicles having engines displacing in excess of 50 cubic centimeters in connection with their ownership, operation, or rental of such vehicles.
The City does, however, have authority to "adopt additional traffic regulations which are not in conflict with [subtitle 4 of title 27 of the Arkansas Code]." A.C.A. § 27-49-106(a)(2). Accordingly, in response to your first question, the City is not prohibited from adopting traffic regulations with respect to any and all vehicles, including those having engines displacing in excess of 50 cubic centimeters (e.g., motorcycles and motor-driven cycles), to the extent such regulations do not conflict with subtitle 4 of title 27 of the Arkansas Code. The City has not done so, however, by virtue of the Ordinance you have enclosed.
With respect to your second question, A.C.A. § 27-49-106(a)(2) provides, as stated above, that local authorities may adopt "additional traffic regulations which are not in conflict with the provisions of [subtitle 4 of title 27 of the Arkansas Code]." Also as noted above, A.C.A. §27-49-106(b)(8) expressly provides that subtitle 4:
 shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from . . . [r]egulating or prohibiting the traffic from and use of mopeds, three-wheeled vehicles, and other similar vehicles.[1]
Here, the Ordinance states that City adopted it in the exercise of its police power and in recognition of its authority under A.C.A. §27-49-106(b)(8).
With the exception noted in footnote 3 below, nothing in the Ordinance purports to make distinctions, as suggested by your second question, with respect to the origins of the vehicles that are the subject of the Ordinance; in other words, the Ordinance does not, on its face, make distinctions among vehicles rented from businesses located outside the City limits, on the one hand, and vehicles rented from businesses located within the City limits or owned and operated by residents of the City or tourists, on the other. Neither does the Ordinance distinguish, for purposes of the requirement that lessors of mopeds, three-wheeled vehicles, and similar vehicles obtain a franchise from the City, between lessors whose operations are located outside, or within, the City limits.
The essence of your second question is somewhat unclear. If your primary concern is whether the City may lawfully enforce the provisions of the Ordinance relating to the operation of mopeds, three-wheeled vehicles, and similar vehicles within the City against the operators of such vehicles rented from establishments located outside the City limits, it is my opinion that the answer is "yes." Those portions of the Ordinance relating to vehicle operation are traffic regulations, as contemplated by A.C.A. § 27-49-106(b)(8). In my opinion, the origin of the vehicle is irrelevant to the City's interest in regulating traffic, in the words of the Ordinance, "to insure the safety and general welfare of its citizens. . . ." It follows, and it is my opinion, that, just as the state regulates the operation on its roadways of vehicles from outside the state, the City may enforce those provisions of the Ordinance relating to vehicle operation against the operator of any moped, three-wheeled vehicle, or similar vehicle operated within the City, regardless of the origin of the vehicle, the identity of its owner, whether it is rented or owned by the operator, etc.
As the Ordinance does not, again with the exeption noted in footnote 3, purport to discriminate, on its face, among individuals on the basis of the origin of their vehicles, it does not appear to be constitutionally suspect under the equal protection clauses of the Constitution of Arkansas, art. 2, § 3, and the Constitution of the United States, amend. 14, § 1. The issue of whether the Ordinance has been unconstitutionallyapplied in a particular case, as your question seems to imply, is factual in nature, and thus not the proper subject of an attorney general's opinion. A court or other trier of fact would have to determine this question after a presentation of all the facts and circumstances surrounding the City's implementation of the Ordinance.
To the extent your second question is concerned with whether the City may regulate, under the Ordinance, the business of renting mopeds when that business carried on outside the City limits, it is my opinion that such regulation likely is beyond the authority of the City. In City of Argentav. Keath, 130 Ark. 334, 340, 197 S.W. 686 (1917), the Supreme Court of Arkansas stated:
 The authority of municipal corporations to exercise powers beyond their territorial limits must be derived from some statute, either expressly conferring such powers or granting them by necessary implication.
Significantly, the rule stated in City of Argenta has been reaffirmed subsequent to the repeal of Dillon's Rule in 1971 (see A.C.A. §§ 14-43-601
to -610). In Perry v. State, 303 Ark. 100, 102, 794 S.W.2d 141 (1990), the court stated that "[t]he authority of municipal corporations to exercise powers beyond their territorial limits must be derived from some state statute." Also relevant is Butler v. City of Little Rock,231 Ark. 834, 841, 332 S.W.2d 812 (1960) (Johnson, J., dissenting), wherein it was said: "It is fundamental in the law that municipal corporations have no extra-territorial powers but their jurisdiction ends at the municipal boundaries." The majority in Butler recognized the validity of a statute expressly authorizing municipal zoning authority beyond the city limits.
I know of no statute expressly permitting a municipality to require a franchise of, or to tax, a business of the type at issue that is located outside the municipality's corporate limits.[2] Neither, in my opinion, is the extraterritorial application of the Ordinance's provisions regulating and taxing rental businesses necessarily implied from the City's authority under A.C.A. § 27-49-106 or its general police power. In my view, the City's interest in safety and welfare may be adequately furthered by the enforcement, against persons operating vehicles within the City, of the general traffic laws, the provisions of the Ordinance regulating vehicle operation, and, if deemed necessary, additional traffic regulations adopted by ordinance.
In connection with preparing this opinion, I have examined the statutes and regulations cited in your request. Two of those statutes have been cited and discussed above. Consideration of the others is not, in my view, necessary in order to answer the questions you asked. I will, nevertheless, discuss them briefly.
Arkansas Code Annotated § 27-14-702(a) (Repl. 1994) provides:
 No owner of a motor vehicle who shall have obtained a certificate from the Director of the Department of Finance and Administration as provided in this subchapter shall be required to obtain any other license or permits to use and operate it; nor shall the owner be required to display upon his motor vehicle any other number than the number of the registration issued by the director, or excluded, or prohibited, or limited in the free use of the motor vehicle upon any public street, avenue, road, turnpike, driveway, parkway, or any other public place, at any time when it is open to the use of persons having or using other vehicles; nor shall the owner be required to comply with other provisions or conditions as to the use of motor vehicles, except as provided in [chapter 14 of title 27 of the Arkansas Code].
In Op. Att'y Gen. 92-118 (copy enclosed), this office opined that a motorized bicycle, as defined in A.C.A. § 27-20-101(3), is not a vehicle subject to the state registration and licensing laws.[3] Because I assume that the vehicles actually in use and subject to the Ordinance are motorized bicycles, as defined by the statute, the prohibitions of A.C.A. § 27-14-702(a) are not applicable here.[4]
Arkansas Code Annotated § 27-20-104 (Repl. 1994) requires certain equipment on motorcycles, motor-driven cycles, and motorized bicycles. I note that the Ordinance requires vehicle operators to wear helmets, while the statute does not require operators of motorized bicycles to wear helmets. In my view, A.C.A. § 27-20-115, which prohibits municipalities from enacting ordinances in conflict with subchapter 1 of chapter 20 of title 27 of the Arkansas Code, of which A.C.A. § 27-20-104 is a part, but permits municipalities to "adopt additional traffic regulations which are not in conflict" with the provisions of the subchapter, gives the City ample authority to require operators of motorized bicycles to wear helmets. In my opinion, such a requirement is not in conflict with A.C.A. § 27-20-104, as that section does not address the wearing of helmets by operators of motorized bicycles.
Arkansas Code Annotated § 27-20-111 (Repl. 1994) provides that operators of motorized bicycles "shall be subject to all state and local traffic laws, ordinances, and regulations." [Emphasis added.] This portion of the statute only provides additional authority for the City to enact measures such as the Ordinance.
The statute also requires operators of motorized bicycles to obtain an operation certificate, and provides that no person under ten years of age shall be issued a certificate. The Ordinance requires operators to have a valid driver's license or motorcycle operator's license. Individuals must be at least 16 years of age to obtain an unrestricted driver's license or motorcycle operator's license. A.C.A. §§ 27-16-604(a) (Repl. 1994);27-20-106(a) (Repl. 1994). In my view, the provision of the Ordinance requiring operators to possess a valid driver's license or motorcycle operator's license, to the extent it prohibits the operation of vehicles by individuals qualified and licensed or otherwise permitted to do so under state law, may be in impermissible conflict with state law under A.C.A. § 27-20-115(a)(2), prohibiting local ordinances in conflict with the provisions of subchapter 1 of chapter 20 of title 27 of the Arkansas Code, which includes A.C.A. § 27-20-111.[5] One legal encyclopedia summarizes the few relevant cases as follows:
 It has been held that the provision of a state statute making it unlawful for a person under a certain age to drive a motor vehicle is equivalent to saying that it is lawful for a person over such age to drive a motor vehicle, and that consequently a municipal ordinance which sets age requirements for driving a motor vehicle at variance with the state statute is invalid and of no effect. It has been so held even though the municipality has been empowered to license drivers, and particularly where the state constitution empowers municipalities to adopt only such police regulations as are not in conflict with general laws of the state. However, in other cases it has been held that municipal ordinances may properly set forth age requirements for drivers of motor vehicles which are at variance with state statutory requirements, it being held that such ordinances do not really conflict with the state statutes, or that they constitute a valid exercise of municipal power.
7A Am. Jur. 2d Automobiles and Highway Traffic § 110 (1980) (footnotes omitted). In my opinion, no Arkansas case law exists that would control this question, and it is impossible for me to predict with any degree of certainty how a case challenging this provision of the Ordinance would ultimately be decided.
Arkansas Code Annotated § 27-20-115 has been mentioned and discussed above.
Arkansas Code Annotated § 27-49-105 (Repl. 1994) provides:
 The provisions of [the Uniform Act Regulating Traffic on Highways of Arkansas, Act 300 of 1937, and codified primarily in title 27 of the Arkansas Code] shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein.
As noted in House v. City of Texarkana, 225 Ark. 162, 279 S.W.2d 831
(1955), this statute was a part of the same section of Act 300 of 1937 as the provision now contained in A.C.A. § 27-49-106(a) authorizing local authorities to adopt additional traffic regulations not in conflict with the Act and does not affect that authority.
Finally, I have reviewed Gross Receipts Regulation G-12 of the Arkansas Department of Finance and Administration. Nothing therein appears to be directly relevant to the questions posed in your request.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] The Arkansas Code does not define the phrase "mopeds, three-wheeled vehicles, and other similar vehicles" as used in A.C.A. §27-49-106(b)(8). In my opinion, the definition of that phrase in the Ordinance is within the likely intent of the General Assembly's use of the phrase, and is not unreasonable.
[2] There is some question as to whether the City is empowered to award an exclusive franchise for moped rentals. It appears that municipalities may grant exclusive franchises only where state law authorizes the same, or where a legislative intention to permit municipalities to displace competition can be inferred from state legislation on the subject. SeeLH Sanitation v. Lake City Sanitation, 769 F.2d 517 (8th Cir. 1985). I know of no state legislation expressly providing for exclusive municipal moped rental franchises or necessarily implying an intent to allow municipalities to displace competition in this area.
[3] That opinion went on to conclude that, as motorized bicycles are not subject to the state registration and vehicle licensing laws, the operators of such vehicles are not required under state law to obtain liability insurance. In Op. Att'y Gen. 92-170 (copy enclosed), this office found it unnecessary to render an opinion on whether a municipality may require liability insurance on a vehicle where the state does not. I note that the Ordinance requires franchisees to submit a certificate to the effect that it has obtained liability insurance on its vehicles in the same amounts required by state law for automobiles. Because I take your first question to pertain only to vehicles upon which the state requires liability insurance (i.e., motorcycles and motor-driven cycles; see Op. Atty. Gen. 92-170), and because I have concluded, with respect to your second question, which is primarily concerned with vehicle lessors whose businesses are located outside the City limits, that the City probably lacks authority to regulate such lessors, I render no opinion with respect to whether the City has authority to require liability insurance upon motorized bicycles. I would point out, however, that the provision of the Ordinance requiring proof of liability insurance from lessors but not from owner-operators, may be constitutionally suspect on equal protection grounds.
[4] I understand your first question to concern only motor-driven cycles and motorcycles. Your second question refers only to "mopeds." The word "moped" is defined by one source, consistently with my assumption, as "motorized bicycle." THE CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH 707 (J.B. Sykes ed. 1976). I recognize that vehicles other than mopeds may fall within the definition of "moped, three-wheeled vehicle and other similar vehicle" in the Ordinance. As your request does not suggest that any vehicles subject to the Ordinance other than mopeds are actually in use in Eureka Springs, I do not address such vehicles herein.
[5] This portion of the Ordinance may also be in violation of Ark. Const. art. 12, § 4, which prohibits cities from passing "any law contrary to the general laws of the state. . . ."